Mr. Thompson, whenever you're ready, we'd be happy to have you begin. May it please the court. My name is Jeremy Thompson. I'm here on behalf of the appellant Marshall Cohen. From the decision to revoke to the lifetime term of supervised release imposed to the conditions of supervision, the district court erred below at every turn. These errors were caused by a lack of detailed fact-finding and nuanced legal reasoning required by this court's precedents. The district court's errors began with its decision to revoke Mr. Cohen's supervised release. The district court was presented with two alleged violations of supervised release. One was a violation of modified condition two, which required that Mr. Cohen participate in a sex offender treatment program. Did the judge describe anywhere, either orally or in his order, what the word participate means? No. Ordinarily the language in a court order would be participate and successfully complete. They didn't use that language here. So what does participate mean in your mind? Participate means, and I think this court's precedents are clear that we interpret terms of supervised release similar to a statute. So it has its ordinary meaning. Participate means to take part in, and that is what Mr. Cohen did. Mr. Cohen took part in a sex offender treatment program. The term of supervised release did not include language directing that he either comply with the terms of the sex offender treatment program or successfully complete the sex offender treatment program. So all he was required to do was participate. He was participating in that program until he was detained by the magistrate judge on direction by the district court. Do you define participate as attending? I believe, yes, that the word participate means to take part, to attend, to- All right. Okay, sir. Yes. Can I ask you, let's posit that I'm sympathetic to your argument on two, but extremely skeptical of your argument on five. Would you like to try to convince me why five is not a really, really tough argument for you? Yes. I will move to modified condition five. Modified condition five requires that Mr. Cohen not have possessed sexually explicit conduct. Material, let me be clear, audio or visual depictions of sexually explicit conduct. Sexually explicit conduct is defined by statute, and in this case it is, the specific issue here is the lascivious exhibition of the genitals. This wasn't just a nude photograph. This was a photograph of his penis that he exchanged for photographs of a woman's nude breast. That is correct, and that brings me to my main point with regard to the objective test set out by this court in Cortad regarding how this is to be interpreted. I'm not suggesting the district court applied an incorrect standard when it, and I wanted to make sure I was clear on this, an incorrect standard of whether the photograph itself is objectively lascivious. Our argument in the briefing is that the district court said that a photograph of an erect penis is by itself lascivious. It is the context surrounding the production of the photograph, which we believe is irrelevant to the consideration of whether it is objectively lascivious. Let me ask you this. Let's just say that I read the record differently, that I don't read the district court as saying that an image of this particular nature is inherently and under all conceivable circumstances lascivious, but under the facts and circumstances of this case, this picture is. I understand you don't agree with that, but let's say that I read the record that way. At that point, is that enough to appall me? If that is the district court's holding, where the district court said because of the circumstances and nature of the way in which the photograph was produced. Not even necessarily the circumstances and nature. Maybe I just look at the photograph and say I'm not saying that a photograph that depicts this particular thing is, I'm not purporting to say that under all conceivable circumstances this would be lascivious, but I have looked at this photo and this photo is. And I might add, isn't that within the discretion of the judge? Well, that's, the discretion of the judge is to apply the correct standard. So the correct standard is to look at essentially the four corners of the photograph and determine from the four corners of the photograph how it is lascivious. The district court did not do that. The district court simply said a photograph of an erect penis is lascivious. Can I ask you then on harmlessness? Now obviously that posits. So you argue one of the other issues the parties disagree about is if the court were to conclude the violation of two was wrong, the violation of five was fine, whether it's harmless. And you say you can't assume it because it was two violations. I mean, let me just give you what I think is the government's best argument. That would be one thing, I guess, if there were like two different violations. Like, I don't just mean violations of two different special conditions. I mean, he did one thing, and then he did another thing. The court found they were both violations, right? Here it's just one thing, right? The thing he did is one thing, and the district court found that it violated two conditions as opposed to one. Why isn't it much more sensible to say the thing he did is this thing? And regardless of whether it's one or two, why would we possibly believe the district court would have imposed a different sentence? Because the government bears the burden of demonstrating that the district judge would have imposed the same sentence regardless. It is not our burden to show that a different sentence would have been imposed. They must show that a different sentence, that the same sentence would have been imposed. And the district court gave no indication, there's no statement in the record, similar to what happens with guidelines errors, right? Where a district court says, even if I'm wrong about this, I would do the same thing. Correct. There's nothing in the record that demonstrates that the district court would have done so. And as we argued in the reply brief, a supervised release is kind of a contract with the court, right? You have obligations to the court. And when you look at the number of violations, the number of violations is relevant to the determination of how egregiously you've broken that contract with the court, how many times you've broken that contract with the court. And so the fact that you violate more than one condition, I believe, is a relevant factor to determining the appropriate sentence. But is it not clear from the record that the district court's main concern was the act of exhibition itself? That whether it technically violated the meaning of participation or whatever, there's certainly a reasonable argument that can be made, whether it's conclusive or not, that participation means that you are something a little bit more than simply enrolling and attending sessions, but that you actually comply with what the program was trying to achieve. But even putting that to one side, what the district court recoiled from was the act itself. And if that is what was motivating the district court's sentence, why would we suppose that the court's reaction would be any different upon a remand? Again, Your Honor, because we're dealing with a weird counterfactual situation when we're trying to decide what would have happened in the event that there was only one violation or in the event that... We ask that same thing all the time when we relate it to what a jury would have done, whether it's harmless error or not, or whether a district court would have imposed the same sentence or not, and in order to avoid sort of ticky-tack remands and unnecessary hoop jumps, we sort of have to ask ourselves that question, do we not? We have to ask ourselves predictive questions. Of course. I completely agree with Your Honor's statement. I think that's why it's important that it's the government's burden to show that there's evidence in the record that the district court would have made the same decision. This record is silent with regard to what the district court would have done and how the district court viewed the two... The district court made no statement with regard to which violation it considered more of a violation of two or five. What do you say to the argument that the district court made pretty clear what it thought was serious? It was having this picture, and whether we call that a violation of two or five, the breach of trust, and you talked about the contract with the court, is you've literally been told you're not supposed to do stuff like this, and this is literally within the span of not too long, you are doing the very thing you were told you're not supposed to do. Yes. That is certainly the district court's concern. Again, all I can say is the district court's, again, concern is evident from the record about what he did, but the district court is not distinguishing between which conditions he violated. When you don't know why the district court chose the sentences... Well, let's look at what the district court did. It said, given repeated violations, rehabilitation is a lifelong process. I didn't want the defendant to slide back into child pornography. And said that the seriousness of it was what required a rehabilitation as a lifelong process. And we know that a good number of child pornography convictions carried, and with respect to the child, carried a lifetime maximum of supervised release, and nearly a third of child pornography offenders received life. But I'm just... So when you look at what the district court was saying, this is a repeated violation, it requires a lifelong process. I don't want you to slide back. And I think she was just concerned factually with what happened here. And it's hard to believe that an exchange, the kind of exchange that was going on, would have been anything other than a violation of the terms of supervised release. It's got to be a part of this that the district court did not impose a prison term. The district court continued to allow Mr. Cohen to be out of prison and to engage in supervised release. That in itself would indicate that she's weighing, if they wanted to impose the most severe sentence, the I would note that Mr. Cohen's revocation range was three to nine months. And at the time of the revocation hearing, he had already been in jail for two months. So if she had imposed a sentence at the low end of the guideline range, which would have been three months, he largely would, if not have already completed that term. But if, of course, if she had chosen a sentence on the higher end of the range, then he would have been in custody for a longer period of time. Well, what's so onerous about the supervised release conditions? They restrict on restrictions on the unauthorized access to children, and there's some restriction on the use of computers and the child pornography in the first place. So when you look at it, what is so onerous about the conditions which, of course, are always open to modification if the individual proceeds on a course that is admirable in some ways? I see that I'm out of time. If I may respond, Your Honor. Well, why don't you? Okay, go ahead. Taking aside the special condition 11, the nudity restriction, the computer, Internet, and child contact restrictions are extremely, especially in today's modern society, restricted in terms of what he can do, what he is allowed to possess, what he is allowed to access. This court has repeatedly described those conditions as very onerous and that those are conditions which affect nearly every aspect of his life. But they are less onerous where the computer itself was the vehicle of distributing the child pornography in the first place. Where the conditions are onerous are when you have situations that don't involve this kind of sex offenses, then they may not relate to the incident offense. But where you restrict access to the very device that was utilized in the incident offense, don't the conditions become more reasonable? They do. That goes to the Rule 28J letter that I filed with regard to ARCE as well earlier this week. And I wanted to make one clarification about that because I discussed physical contact and the government pointed out that it may not necessarily need to be physical contact. I was looking at the conditions, Ellis and ARCE and Hamilton and forgive me, I'm forgetting the other two, but there has been direct physical contact between the defendant and the victim where the computer restrictions have been upheld. Where there has been no direct contact between the defendant and a victim, a child victim, the computer and internet restrictions have been reversed. Thank you, counsel. You've got some rebuttal time and we'll look forward to hearing from you at that point. Thank you, Your Honor. All right, let's hear from the other side of this. Thank you, Your Honor. May it please the Court. Elliot Daniels from the U.S. Attorney's Office in South Carolina and I represent the United States. Your Honor, the revocation of the defendant's supervised release below should be affirmed because the Court's record below is replete with strong support that he violated multiple conditions of his release and the sentence imposed upon his revocation is reasonable. But I may propose to begin where this Court just left off with my colleague, and that is whether the conditions that this Court imposed on supervised release are reasonably related to the defendant's history and characteristics in his conduct. I'm afraid that he continues, Mr. Cohen, that is, to minimize the seriousness of his contact with others, to include children, and his underlying offense... All right, well, you know, what he did was a serious infraction and the rest. On the other hand, a lifetime of supervised release, that's a long time. So what chance is there for somebody to say, I've lived a blame-free life in this regard for 5 years or 7 or 10 years? I've done this, I've done that. There's been no hint that I've been involved in the distribution of child pornography. What chance is there for this person to demonstrate that the condition could be lifted after a period of good conduct? Well, the defendant could always petition the Court and ask for the conditions of his release to be modified or for his supervision to be terminated or the term to be shortened. Your Honor, the defendant would have to show that the Court below committed plain error because he did not object to the length of the term of supervised release, and the defendant cannot show plain error given the broad discretion the Court has. And that's particularly true in this case where he had a shorter term of supervised release until he showed the Court that he was unwilling or unable to abide by less restrictive terms of release for shorter periods of time. We're here on a revocation. We're not here on an initial sentencing. And district courts are given broader discretion in revocation sentences. And when Judge Hendricks sees a defendant who's unable to abide by conditions of release, and she says, in my view, given your history and your conduct, this is going to be a lifelong process and you need to really commit to your recovery, and she extends his supervision from five years to life, it's in the context of someone who contacted multiple people to obtain child pornography, directed a father to go further, to keep going with a two-year-old to produce additional child pornography, exchange child pornography, and while in supervision, to Judge Hyten's point, when my colleague was speaking, in a relatively short order, again, he contacts more people and is exchanging explicit photographs in exchange for more nude photographs. Mr. Daniels, can I ask you about the two parts of Special Condition 11 that give me pause? They're the words, in the nude, and they're the words, business whose primary purpose is to provide sexually oriented material entertainment. Well, let's just posit that I find the other parts of it entirely unobjectionable and untroubling, but your friend on the other side sort of makes an argument that in the nude is potential, so websites depicting children or adults in the nude, and he says, wow, that's a shockingly broad number of people depending on how we define in the nude. What do you have to say to that? Your Honor, I would say that this court in Van Donk and in Hamilton, which was authored by Judge Wilkinson, have made clear that some gray areas are okay, that to promulgate a condition, if the district court was required to, in a way that would parse out every possible permutation of a website that may show somebody in the nude, would require the district court to propound a condition that is a prolix code of Hammurabi in proportions. The district court is allowed to impose broad categories. Well, what's wrong with the language that he was found to have violated here, lascivious display of the genitals or something like that, which is significantly narrower than in the nude? Sure. The reason why in the nude is reasonably related and is necessary is because less restrictive conditions apparently did not prohibit him from returning to his condo. In the nude is a broad restriction. Well, that would prohibit him, for example, even having some photographs of perhaps his grandchildren. I mean, don't you think that's a pretty, pretty wide definition here? It is a broad restriction, and there's a reason it's a broad restriction, and the reason why is because he was unable to abide by less restrictive conditions the first time around. I will note that Special Condition 5, which it seems that some in the courtroom may posit he clearly violated by engaging in the exchange of pornography of himself with others, that also restricted the exchange of the depictions of sexually explicit material, which he did on supervision. Right. Well, posit that I think it would be clearly reasonable to restrict him and to continue to restrict him from having sexually explicit material. That seems uncontroversial. But there's the pictures of the grandchildren in the bathtub hypothetical. There is Michelangelo's David hypothetical. You can do a whole series of things that like, really? It's going to cover that? Well, the question is whether it's overbroad. It seems to be that that might be the question. Does this restriction restricting him from having depictions of adults or children in the nude, is it overbroad? In this case, the court considered his history, considered his characteristics, considered his repeat violations, his lies to the probation officer, specifically about depictions in the nude, and found that it was appropriate. The treatment provider found that his possession of depictions of adults in the nude violated the pornography rules, and the court found, although it is a restrictive condition, it was necessary for this defendant. I don't think we question the judge's objective. The question is whether or not the language here should be narrowed somewhat to eliminate the kind of photographs that we've been talking about, child in the bathtub being the example. Your Honor, this defendant has a history of obtaining photographs of toddlers in the context of sexual abuse. It's difficult to imagine that given his repeated violations, and while this case is on appeal, of course there's another violation pending again with similar conduct, that he could convince the district court that these conditions should be relaxed such that he can obtain and responsibly be in possession of photographs of children or adults in the nude. Can I ask you another one? So the other one that gives me some pause is may not patronize businesses whose primary purpose is to provide sexually oriented material entertainment. Now, on the one hand, there are certain businesses that I think plainly satisfy that, and it does not strike me as at all problematic to cover those. But then I guess part of me says, have you paid attention to our modern media environment? I'm trying to think about the range of businesses that could be plausibly described as providing sexually oriented material or entertainment. Not pornographically, not, you know, but like sexually? I mean, have you, has one been outside? Has one been on the internet in the last 20 years? Your Honor, I think the primary purpose is a substantially narrowing term here in the condition. I think that in Hamilton and in Van Donk, the court said that the reviewing court can look at the ways in which probation enforces the restriction to determine whether it's arbitrary, vague, unpredictable, or overbroad. And here, he's been violated twice. There's one pending now that's not been admitted to. There's one the district court found he did violate. And when he's violated, there are always unreasonable circumstances where he's exchanging pornography in violation of the rules. He's not being found looking at statues of David in a museum as he posits in his brief. Instead, what he's doing is he's exchanging pornography in the context of a conversation about fetishes. And I guess my answer is, and those are all violations of the existing conditions that seem to be covered by the existing conditions, so why do we need to broaden the conditions? Because it's reasonably related to his conduct. The judge found that, given this record, the judge could reasonably conclude, and it's not an abuse of her discretion, to find that such restrictions are reasonably related to his conduct because there's a nexus to his violation conduct and there's a nexus to his criminal activity where he is viewing in possession of and exchanging photographs or videos of nudity. When such conditions are vacated, there's generally no nexus. Here, to Judge Wilkerson's point, it's the very vehicle by which he violates. And so it is broad. The government doesn't posit it's not broad. But unfortunately, in the context of a revocation, in a repeat context of revocation, the district court found it appropriate and necessary to enhance the restriction. Can I take you back to the participation issue? Yes. Okay, so let me give you an example that strikes me as a pretty straightforward one. One of the things that we often, if people are convicted of, if defendants are convicted of crimes involving drugs or alcohol, district courts often order substance abuse counseling. So you might have to participate in AA or a similar program. And so then imagine that a person, my understanding, is that people often show up at AA meetings and say, since the last meeting, I had a slip-up. That's what addiction is. That's what a disease is. People don't always get better all at once. Would the government really take the position that a person who was ordered to participate in AA and continues to go to all the meetings and begins, I'm so-and-so and I'm an alcoholic, and opens up there by saying, I drank between the last meeting and this one and it was really hard for me and I'm working on it but it's difficult, would we really say that person's not participating in AA? Well, Judge, every one of these violations and hypotheticals are intensely fact-specific. And so the court would have to look at their history. The court would have to look at the quality and quantity of their participation and the nature of the violation of the treatment program's rules. Here, I don't think there's a question. The treatment provider wrote a sentence that was before the District Court of Sentencing that his conduct violated the rules. So here I believe it's settled. But to go to Judge Hudson's point, I mean, and right, if the conditions of supervised release said you must participate in and follow the rules of, I don't think it would be any debate that he violated that. But this just says, or if it said participate in successfully complete or participate in this, this just says participate. And in this case, the program did not find him to be in violation. They allowed him to continue. The program ultimately did, Your Honor, tell the judge that his conduct did violate the treatment program's rules. They laid out the rules and the basis for it and two specific applications as a defendant. But initially, to Your Honor's point, when the probation officer contacted his doctor, the doctor did not kick him out of the program. Instead, when the probation officer notified the court, the court was so concerned by the specificity of his conduct. So in the view of the program, he was still participating, although he had at least one incident in which he was in violation of the rules. But there's nothing on the record to indicate that they didn't feel that he was receiving some benefit from participation. Well, you know, I believe with this defendant, unfortunately, it was a mixed bag. I mean, there were, of course, some times where he would show up and some times where he would participate and some times where he would flout the rules. And he would lie to his supervising probation officer. He'd lie to his treatment provider when they confronted him with it. Even when they confronted him with it, he would continue to minimize. So to Your Honor's point, there was some participation, but the question is whether there's such meaningful participation such that he satisfies the condition the court set. Here, the court concluded he did not. Unfortunately, the judge didn't put that in her order, as most judges do. I don't know whether it was a slip or if that's not their policy down there. That's a fair question, Judge. I don't know the answer to that question. But I think the closest analogy to a case is one that the defendant cited in his brief. The Metzner case from the Tenth Circuit. And in that case, which is 584 F. 3rd 928, the defendant, Metzner, was a child pornography defendant who was on supervision, and he was successful on supervision for nearly three years. And on his final polygraph, as he completed the program, he failed. He told the program he had lied to the program, and he engaged in the exchange of pornography with women using his device. Everything that Mr. Cohen did on supervision. He was violated. The district court found that was a failure to participate, and the Tenth Circuit affirmed that it was a failure to participate, apparently adopting a substantial participation, substantial compliance standard, which is what we posited below, and the court adopted it by adopting our memorandum, adopting our argument, and adopting the evidence. It's just very worrisome to me, the idea that it turns out that it would be one thing. So when we talk about nudity, when we talk about sexually explicit, you say don't worry. The terms are super broad. Don't worry, because as a practical matter, probation would be reasonable in the district court. The district court's not actually going to violate you for having a photo of your grandchildren in the bathtub. That's not really going to happen in the real world. So when the language is really broad, the government's response is to say don't worry. The court will be reasonable and can narrow it. And here the argument can be it says participate, and in the normal meaning of the word participate, he's participating, but then the probation and the government and the district court can adopt a broader reading of the word participate that's not the normal definition of participate and say, well, you violated that. Well, Your Honor, and what I'd say is that under pageant and Welsh, the question ultimately comes back to these difficult, fact-intensive questions. We have to trust the discretion of the court. But I don't think this is a fact question. The question of does participate mean go to the meetings and not get kicked out, or does participate mean comply to a substantial degree, that's not a factual question. That's what the word participate means. That's a debate about what the word means. And I don't think we give deference to the district court about what the word means. Sure. And I apologize. What I meant by fact-specific is whether or not he participated. But as for what the word means, this court has held repeatedly that if a defendant has confusion as to what a word means, it can go back to the probation officer. This court, as a reviewing court, can also look down on how the probation office seeks to enforce the conditions of release to determine what they mean by the word. This court has also found that a scienter requirement But aren't those all generally situations, again, where there's broad language and the concern is does this conduct, which arguably falls within the broad language but also seems kind of innocuous, you can say to your probation officer, does this really prevent me to going to Florence? I don't know where Michelangelo's David is. But does this really forbid me from going to see Michelangelo's David? And I can ask my probation officer, can I do that without getting sent back? Or does it forbid me from going to the Museum of Sex in New York City or something like that? I can ask my probation officer if I can do it. But here, if the argument is I read Participate, I am still going, they haven't kicked me out, it would never occur to me that this violates the term, why would I go ask my probation officer? Well, Your Honor, I'd submit that the defendant can ask the same question as to what Participate means. When the district court tells him you're facing new prison time if you don't participate, this court has told supervisees they can ask their probation officer what does it mean to participate? If he doesn't know what Participate means, he has the ability to ask his probation officer. There's a CENTER requirement read into every condition. Inadvertent violations are not, for example, you show up late to your counseling session, you're stuck in traffic, you submit your forms to the wrong person, those are inadvertent violations that are not enforced. This court reads a knowing requirement, reads CENTER into the violations below. He has to knowingly fail to participate, which is what he clearly did here. And he also has the ability to go ask his probation officer for what Participate means. Thankfully, in this case, I believe his violation conduct is so clear, it's not a difficult question, but to your point, more broadly, there is that question going on about what does Participate mean. We propounded a substantial compliance theory below, the court adopted it, and we'd submit that's not an abuse of discretion. Wait, again, why would it possibly be abuse of discretion how you interpret the word? We'd submit it was not abuse of discretion to look at the condition and conclude that he violated that condition. We think that the condition has plain meaning and that with his behavior, where he was engaging in conversations about fantasies with women, exchanging pictures of his erect penis in exchange for their nude photographs, that's not participation, it undermines the core of the purpose of rehabilitation. Could you address the harmless error argument, specifically your friend on the other side's argument? Look, we do get a lot of cases where district courts say, even if I was wrong about something, I would have done the same thing anyway. And here, we don't have a district court judge saying that. So just give me your best case, notwithstanding the fact that the district court did not say, even if I'm wrong about violation two, I would do the same thing because of violation five. What's your best argument that the error is harmless? That the facts of the violation are so inextricably intertwined, they are the same conduct. That when he engaged in conversations about fantasies with strangers on the Internet, engaged in dating applications, and possessed pornography, produced pornography, and lied about it, that conduct, the same conduct, violated modified condition two and modified condition five. And if one of the two violations went away, the court would still have that breach of trust. The court would still have that recidivist conduct. The court would still have that return to the same type of behavior it's seen in the past, which is him using devices for explicit material that undermines his rehabilitation. With one of those two conditions gone, the court would still have the same problem with Mr. Cohen and still have the same concerns, still have the same concerns about public protection, about recidivism, about this being a lifelong process and a slippery slope and something this court needs to keep its eye on. So we'd submit, Judge, with this record, there's no indication that without two and instead five remaining, for example, that this district court would give him a different sentence or there would be a different outcome below. I'd submit with the record there's no support for that. Your Honors, I believe that we've addressed the court's discretion to extend the length of time for supervision, the explanation for its basis for the special conditions and Special Condition 11. I'd be happy to answer any questions about those issues before my time expires. And seeing none, we'll rest on our briefs. Thank you very much. One thing, Counsel, one thing. I'm just interested in sort of a ground level perspective here. The dialogue today and the argument today I think is focused on the question of the nude adults and the nude adults being overly broad and then the participation has a different problem, which is that it's vague what exactly it means. And so, you know, is the supervised relief order perfectly crafted? Are the conditions perfectly crafted? No, they're not. Would the district court do the same thing on remand? Probably, yes. Probably would narrow the terms a little bit and make clear the meaning of the term participation. But at the end of the day, if you read the record as a whole, the supervised release, lifetime of supervised release under conditions that are very similar to these is probably going to come down. What I'm curious about as a general matter is supervised release is a very salutary aspect of criminal sentencing and gives people a chance to sort of get back on their feet and to reenter society apart from the difficulties that attend actual incarceration. And, you know, you deal with these things as a regular matter. And are we in danger? I don't know the answer to this myself. But are we in danger of undercutting the utility of supervised release as a component of sentencing when we pick and get overly particular about supervised release? Is the upshot to that going to be a gradual moving away from supervised release because of the problems that the circuit is finding on appeal? Or will it make any difference at all? Or will it cause district judges to lose confidence in supervised release and impose maybe longer prison terms, which they have the discretion to do? I'm asking you just as a practical matter what effect all of these remands on supervised release, generally on questions of vagueness and over rep, whether they're going to impair the utility of supervised release as a component of federal sentencing. What do you think about that? Thank you, Your Honor. I see my time's out. If I could answer the question. Yeah, of course. I asked it. Thank you, Judge. Your Honor, I do think it's a real risk that, of course, Pull that microphone closer to you. Sure. Is that better? Go ahead. Thank you, Your Honor. I do think that there's a real risk of, of course, this court is doing its job appropriately across all of these cases. And there's been more scrutiny on explanations, on lengths of supervision, on exercises of discretion, on terms of supervision that are imposed in recent years, coming down from all sorts of courts of appeals. But I do think that there's a fear that if some of the best tools to support rehabilitation and reintegration into society are either restricted, cabined or district judges, or feel less free or able to reach for those tools, the other tools are more restrictive. They're worse options for defendants. They include generally imprisonment. Supervised release, of course, and when you look at the engagement of a supervisee with their probation officer and their treatment provider, generally what I see on the line are probation officers and treatment providers who want supervisees to succeed, who want to reintegrate them into society and do not want them to return to prison. And I do worry that if we're less able to use supervision going forward, then those tools may be. Because this is what's happening, because we are more particular about the conditions of supervised release than we are about Rule 11 colloquies and about jury instructions and about evidentiary rulings and about the procedural and substantive reasonableness of the term of incarceration. But we've gotten now to the point that the supervised release conditions are the ones that the circuit courts are picking over. Maybe it's because they're irresistible verbally to get in and fine-tune, much more so than a length of prison terms. It's a lawyer's catnip to have the supervised release and to recognize problems of vagueness and overbreadth, which we are trained to do. But there's got to be a question down the line, and these supervised release conditions were not perfect by a long shot. It's a question of degree and how imperfect were they. I can pick them apart. But that's just an overall concern that I have about where we're going with all this. But, you know, these are questions of degree. Anyway, your answer's been very helpful, and I'm going to ask the counsel for the other side their impression of this. But your answer's been very helpful, and I do thank you. Thank you, Your Honor. With that, I'd ask the court to affirm the revocation below in the judgment that was imposed. It was well within the court's sound discretion, and we'd ask this court to affirm the judgment below. All right. Thank you. Let's see. Public Defender has. I'll ask you the same question, counsel. I've appreciated your argument as well. There's no question that there's a certain vagueness and overbreadth, particularly with respect to the term vagueness as a term to participate is vague. Yeah. Okay. I grant you that. The question of matter of nude adults is probably overbroad. They suffer from different infirmities. But, you know, even from a standpoint of public defenders, is the long-term impact of these constant remands about which we've now become enormously particular, are they going to result in longer prison sentences for your clients? Because the district judge will say, well, what the heck? I'm just not going to fool with all this, and I'm not going to fool with all these conditions on supervised release and having the Court of Appeals just nitpick me to death. So I think there's a danger here. I wouldn't expect you in advocating for your client, which you've done very ably, to acknowledge the danger necessarily, but I sure would like to get your views about it. Yes. So as a general principle, obviously, on the defense side of things, I would not want a district judge to say, well, supervised release clearly isn't working as an experiment, so I'm just going to throw people in prison longer. I don't think that is – I don't see prison as very much of a rehabilitative endeavor in the first place. I think supervised release is a much better avenue for rehabilitation. Speaking as someone who has worked both on the – but I've worked on the state and federal side in private practice in South Carolina, I know that the United States Probation Office is much better staffed, is much better funded, and is much more diligent in trying to help defendants rehabilitate and get back on their feet. They help them find jobs. They help them find housing. They help them – they are available for consultation. So I do not want to see supervised release go away. Supervised release serves a very laudatory function to rehabilitate and help – to rehabilitate defendants and help them reenter society. I think what we're seeing a little bit with regard to remands of these conditions is similar to what has happened in the past regarding, say, the Supreme Court's decision in Booker and then the fallout for the several years after that where we had to figure out what the standards are, what district judges need to say in order to properly explain their decisions. Certainly, judges still unfortunately fail in that duty and get reversed by this court. But I think as a whole, the explanations that are given for sentences now in 2022 are far better than they were in 2007 or 2005 when you have Booker and you have Gall and other such cases. So I think supervised release, I think what we need is the district courts need guidance. As I pointed out in the brief, the district courts in South Carolina apply this language, the nudity restriction in particular, Special Condition 11, in virtually every sex offense case, right down to the floating parenthetical in the middle of the provision. That identical provision appears in every… Do you think it would be beneficial for us to have the district court to define what the word participation means so that there could be a uniform application of it throughout the state? Yes, that would be very helpful. Uniformity throughout the state and understanding what these provisions actually mean would be extremely helpful. And that is in part why we have raised these issues here, not just with regard to what it means to participate and whether district judges need to be clear about participation and compliance… But just what the rules of engagement are. Yes, but also with regard to what does the word nudity mean, what does, to Judge Hyten's questions about primary purpose, a sexually oriented material, what does that violate? And I would point out there obviously are concerns, vagueness concerns can to some degree be alleviated by talking to the probation officer, but in this case the probation officer described the photographs that Mr. Cohen received from the women as nude on page 18 of the joint appendix. No nude or explicit photos on page 103 of the joint appendix and not fully nude. But of course, John, that conclusion is very context specific. I don't know how you could have a uniform definition that would guide a judge in every circumstance. No, and I apologize, I see that I'm out of time. What I'm going to say is I'm just not sure that you're going to get this uniformity because the, you know, sentencing criminal defendants, it's not like widgets. I mean, every criminal defendant has different, there are a lot of different circumstances that come. And so a great deal of the supervised release conditions is simply an act of judgment and it has to be tailored to the circumstances of the individual sentence and the individual case and the nature of the violation and the extent of the violation. I mean, where the sexual offenses and sex is involved, it's very difficult to have a perfectly uniform approach simply because look at the Supreme Court's decisions in trying to define lascivious and the like or what's pornographic. At any rate, I've taken too much of your time, but your comments and your thoughts have been very helpful to me as well as those of your adversary and if my colleagues have further questions. I wish I was frustrated by the idea that we would get the uniformity, but it may be a bit of a mirage. We'll see. If my colleagues have questions, that's fine. Otherwise, we'll go directly into our next case. Thank you very much. Thank you.
judges: J. Harvie Wilkinson III, Toby J. Heytens, Henry E. Hudson